Dwayne Farnsworth (#13209)
FARNSWORTH MORTENSEN LAW OFFICES
1837 S. Mesa Dr., Suite A103
Mesa, AZ 85210
Telephone (480) 820-3600
Fax (480) 820-4800
Email: fmcourt@gmail.com

Attorney for Debtors

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | ) In Proceedings Under |
| | ) Chapter Thirteen |
| GRANT W. VAUGHN | ) |
| SS# 1182 | ) Case No. 2:09-bk-02164-SSC |
| | ) |
| and | ) MOTION FOR AUTHORIZATION |
| | ) TO SELL REAL PROPERTY |
| MARVA L. VAUGHN, | ) |
| SS# 4896 | ) |
| | ) |
| Debtors | ) |

COME NOW the Debtors, GRANT W. VAUGHN and MARVA L. VAUGHN, by and through their undersigned counsel and respectfully request an order from this court authorizing them to proceed with the sale of their real property located at 1332 W. 1st Place, Mesa, AZ 85201.

1. Debtors filed a voluntary petition under Chapter Thirteen of the United States Bankruptcy Code on February 9, 2009.

2. The Debtors wish to short sell their home located at 1332 W. 1st Place, Mesa, AZ 85201. However, a court order authorizing the sale is needed so that the debtors may proceed with obtaining a short sell agreement. A copy of the proposed contract is attached hereto as Exhibit "A".

3. Debtors will not be receiving any proceeds from the short sell of the property.

4. The mortgage creditor has lifted the automatic stay on the property.

5. Debtors have a buyer for the property, Eric Nielsen Enterprises, Inc., and a closing date is contingent upon receiving an acceptable short sale agreement.

WHEREFORE, Debtors respectfully ask this Court, to allow them to proceed with the sale of their real property located at 1332 W. 1st Place, Mesa, AZ 85201.

Dated this  1st  day of  October, 2009.

                FARNSWORTH MORTENSEN LAW OFFICES

                \s\ Dwayne Farnsworth #13209
                Dwayne Farnsworth
                Attorney for Debtors

Copies of the foregoing
mailed this 1st  day
of October , 2009 to:

Russell Brown
3838 North Central Ave., Suite 800
Phoenix, AZ 85012
Trustee

All other interested parties
listed in Debtors' Master
Mailing Matrix

/s/ Robert Shelley

**EXHIBIT "A"**

1st USA Realty Professional

# RESIDENTIAL RESALE REAL ESTATE PURCHASE CONTRACT

Page 1 of 9
Document updated: May 2008



The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

## 1. PROPERTY

**1a.**
1. BUYER: **ERIC NIELSEN ENTERPRISES INC**
   BUYER'S NAME(S)
2. SELLER: **OWNER OF RECORD** _____ or ☒ as identified in section 9n.
   SELLER'S NAME(S)
3. Buyer agrees to buy and Seller agrees to sell the real property with all improvements, fixtures, and appurtenances thereon
4. or incidental thereto, plus the personal property described herein (collectively the "Premises").

**1b.**
5. Premises Address: **1332 W 1ST PLACE**                Assessor's #: **135-51-016**
6. City: **MESA**              County: **MARICOPA**         AZ, Zip Code: **85201**
7. Legal Description: **TWN 1N, RNG 5E, SEC 20, LOT 16**

**1c.**
8. $ **61,000.00** Full Purchase Price, paid as outlined below
9. $ **6,100.00** Earnest money
10. $ **54,900.00 CASH AT COE**
11. $ ____
12. ____

**1d.**
13. Close of Escrow: Close of Escrow ("COE") shall occur when the deed is recorded at the appropriate county recorder's
14. office. Buyer and Seller shall comply with all terms and conditions of this Contract, execute and deliver to
15. Escrow Company all closing documents, and perform all other acts necessary in sufficient time to allow COE to
16. occur on **SEE ADDENDUM #1** _____ ("COE Date"). If Escrow Company or recorder's office
    MONTH    DAY    YEAR
17. is closed on COE Date, COE shall occur on the next day that both are open for business.

18. Buyer shall deliver to Escrow Company a cashier's check, wired funds or other immediately available funds to pay any down
19. payment, additional deposits or Buyer's closing costs, and instruct the lender, if applicable, to deliver immediately available funds
20. to Escrow Company, in a sufficient amount and in sufficient time to allow COE to occur on COE Date.

**1e.**
21. Possession: Seller shall deliver possession, occupancy, access to keys and/or means to operate all locks, mailbox, security
22. system/alarm, and all common area facilities to Buyer at COE or ☐ ____
23. Broker(s) recommend that the parties seek appropriate counsel from insurance, legal, tax, and accounting professionals
24. regarding the risks of pre-possession or post-possession of the Premises.

**1f.**
25. Addenda Incorporated: ☐ Assumption and Carryback  ☐ Buyer Contingency  ☐ Domestic Water Well  ☐ HUD forms
26. ☐ H.O.A.  ☒ Lead-Based Paint Disclosure  ☐ Additional Clause  ☐ On-site Wastewater Treatment Facility
27. ☒ Other: **AS IS ADDENDUM AND SHORT SALE ADDENDUM**

**1g.**
28. Fixtures and Personal Property: Seller agrees that all existing fixtures on the Premises, and any existing personal property
29. specified herein, shall be included in this sale, including the following:

30. * free-standing range/oven
31. * built-in appliances
32. * light fixtures
33. * ceiling fans
34. * towel, curtain and drapery rods
35. * draperies and other window coverings
36. * attached floor coverings

* flush-mounted speakers
* attached fireplace equipment
* window and door screens, sun screens
* storm windows and doors
* shutters and awnings
* garage door openers and controls
* attached TV/media antennas/satellite dishes

* outdoor landscaping, fountains, and lighting
* water-misting systems
* solar systems
* pellet, wood-burning or gas-log stoves
* timers
* mailbox
* storage sheds

*Residential Resale Real Estate Purchase Contract* >>

Page 2 of 9

37. If owned by the Seller, the following items also are included in this sale:
38. • pool and spa equipment (including any
39.    mechanical or other cleaning systems)
   • security and/or fire systems and/or alarms
   • water softeners
   • water purification systems

40. Additional existing personal property included in this sale (if checked): ☐ refrigerator ☐ washer ☐ dryer
41. As described: _____
42. _____
43. ☐ Other: _____
44. _____
45. _____
46. Additional existing personal property included shall not be considered part of the Premises and shall be transferred with no
47. monetary value, and free and clear of all liens or encumbrances.
48. Fixtures and leased items NOT included: _____
49. IF THIS IS AN ALL CASH SALE, GO TO SECTION 3.

## 2. FINANCING

2a. 50. **Loan Contingency:** Buyer's obligation to complete this sale is contingent upon Buyer obtaining loan approval for the loan
51. described in the AAR Loan Status Report without conditions no later than COE Date. If Buyer is unable to obtain loan approval
52. without conditions by COE Date, Buyer shall deliver a notice of the inability to obtain loan approval without conditions to Seller or
53. Escrow Company no later than COE Date.

2b. 54. **Unfulfilled Loan Contingency:** This Contract shall be cancelled and Buyer shall be entitled to a return of the Earnest Money if
55. after diligent and good faith effort, Buyer is unable to obtain loan approval without conditions by COE Date. Buyer is aware that
56. failure to have the down payment or other funds due from Buyer necessary to obtain the loan approval without conditions and
57. close this transaction is not an unfulfilled loan contingency. Buyer acknowledges that prepaid items paid separately from earnest
58. money are not refundable.

2c. 59. **Appraisal Contingency:** Buyer's obligation to complete this sale is contingent upon an appraisal of the Premises by an appraiser
60. acceptable to lender for at least the sales price. If the Premises fails to appraise for the sales price, Buyer has five (5) days after notice
61. of the appraised value to cancel this Contract and receive a refund of the Earnest Money or the appraisal contingency shall be waived.

2d. 62. **Loan Status Report:** The AAR Loan Status Report ("LSR") with, at a minimum, the Buyer's Loan Information section completed,
63. describing the current status of the Buyer's proposed loan, is attached hereto and incorporated herein by reference.

2e. 64. **Loan Application:** Unless previously completed, within five (5) days after Contract acceptance, Buyer shall (i) complete, sign and
65. deliver to the lender a loan application with requested disclosures and documentation; (ii) grant lender permission to access
66. Buyer's Trimerged Residential Credit Report; and (iii) pay all required loan application fees.

2f. 67. **Loan Processing During Escrow:** Buyer agrees to diligently work to obtain the loan and will promptly provide the lender with all
68. additional documentation required. Buyer instructs the lender to provide loan status updates to Broker(s) and Seller. Buyer shall
69. sign all loan documents no later than three (3) days prior to the COE Date.

2g. 70. **Type of Financing:** ☐ Conventional ☐ FHA ☐ VA ☐ Assumption ☐ Seller Carryback ☒ CASH _____
71. (If financing is to be other than new financing, see attached addendum.)

2h. 72. **Loan Costs:** Private Mortgage Insurance is required for certain types of loans and shall be paid by Buyer at COE in a manner
73. acceptable to lender. The following may be paid by either party:

74. Discount points shall be paid by: ☐ Buyer ☐ Seller ☐ Other _____
75. Discount points shall not exceed: _____ total points (Does not include loan origination fee)
76. A.L.T.A. Lender Title Insurance Policy shall be paid by ☐ Buyer ☐ Seller
77. Loan Origination Fee (Not to exceed _____ % of loan amount) shall be paid by ☐ Buyer ☐ Seller
78. Appraisal Fee, when required by lender, shall be paid by ☐ Buyer ☐ Seller ☐ Other _____

2i. 79. **Other Loan Costs:** In the event of an FHA or VA loan, Seller agrees to pay up to $ _____ of loan
80. costs not permitted to be paid by the Buyer, in addition to the other costs Seller has agreed to pay herein. In addition, for VA
81. loans, Seller agrees to pay the escrow fee. All other costs of obtaining the loan shall be paid by the Buyer.

>>

Residential Resale Real Estate Purchase Contract • Updated: May 2008
Copyright © 2008 Arizona Association of REALTORS®. All rights reserved.

Page 2 of 9

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

1332 w 1st pla

*Residential Resale Real Estate Purchase Contract >>*  Page 3 of

2j. 82. **Changes:** Buyer shall immediately notify Seller of any changes in the loan program, financing terms, or lender described in the
83. LSR and shall only make any such changes without the prior written consent of Seller if such changes do not adversely affec
84. Buyer's ability to obtain loan approval without conditions, increase Seller's closing costs, or delay COE.

2k. 85. **FHA Notice (FHA Buyer Initials Required):** HUD does not warrant the condition of the property. By initialing below, Buyer acknowl
86. edges receipt of Form HUD-92564-CN, "For Your Protection: Get a Home Inspection." Buyer further acknowledges that such
87. form was signed at or before the Contract date. Signed HUD-92564-CN is attached and made a part of this Purchase Contract.
88.

(FHA BUYER'S INITIALS REQUIRED)   BUYER   BUYER

## 3. TITLE AND ESCROW

3a. 89. **Escrow:** This Contract shall be used as escrow instructions. The Escrow Company employed by the parties to carry out the
90. terms of this Contract shall be:
91. __GRAND CANYON TITLE STEVE GOWLER__    __4808394464__    __(480) 839-4773__
   ESCROW/TITLE COMPANY                    PHONE/FAX

3b. 92. **Title and Vesting:** Buyer will take title as determined before COE. Taking title may have significant legal, estate planning and tax
93. consequences. Buyer should obtain legal and tax advice.

3c. 94. **Title Commitment and Title Insurance:** Escrow Company is hereby instructed to obtain and deliver to Buyer and Seller
95. directly, addressed pursuant to 8t and 9c or as otherwise provided, a Commitment for Title Insurance together with
96. complete and legible copies of all documents that will remain as exceptions to Buyer's policy of Title Insurance ("Title
97. Commitment"), including but not limited to Conditions, Covenants and Restrictions ("CC&Rs"); deed restrictions; and
98. easements. Buyer shall have five (5) days after receipt of the Title Commitment and after receipt of notice of any
99. subsequent exceptions to provide notice to Seller of any items disapproved. Seller shall convey title by general warranty
100. deed. Buyer shall be provided at Seller's expense an American Land Title Association ("ALTA") Homeowner's Title
101. Insurance Policy, or if not available, an ALTA Residential Title Insurance Policy ("Plain Language"/"1-4 units") or, if not
102. available, a Standard Owner's Title Insurance Policy, showing title vested in Buyer. Buyer may acquire extended coverage
103. at Buyer's own additional expense.

3d. 104. **Additional Instructions:** (i) Escrow Company shall promptly furnish notice of pending sale that contains the name and
105. address of the Buyer to any homeowner's association in which the Premises is located. (ii) If the Escrow Company is
106. also acting as the title agency but is not the title insurer issuing the title insurance policy, Escrow Company shall deliver
107. to the Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying the Buyer
108. and Seller for any losses due to fraudulent acts or breach of escrow instructions by the Escrow Company. (iii) All
109. documents necessary to close this transaction shall be executed promptly by Seller and Buyer in the standard form used
110. by Escrow Company. Escrow Company shall modify such documents to the extent necessary to be consistent with this
111. Contract. (iv) Escrow Company fees, unless otherwise stated herein, shall be allocated equally between Seller and
112. Buyer. (v) Escrow Company shall send to all parties and Broker(a) copies of all notices and communications directed to
113. Seller, Buyer and Broker(s). (vi) Escrow Company shall provide Broker(s) access to escrowed materials and information
114. regarding the escrow. (vii) If an Affidavit of Disclosure is provided, Escrow Company shall record the Affidavit at COE.

3e. 115. **Tax Prorations:** Real property taxes payable by the Seller shall be prorated to COE based upon the latest tax information available.

3f. 116. **Release of Earnest Money:** In the event of a dispute between Buyer and Seller regarding any Earnest Money deposited with
117. Escrow Company, Buyer and Seller authorize Escrow Company to release Earnest Money pursuant to the terms and conditions
118. of this Contract in its sole and absolute discretion. Buyer and Seller agree to hold harmless and indemnify Escrow Company
119. against any claim, action or lawsuit of any kind, and from any loss, judgment, or expense, including costs and attorney fees,
120. arising from or relating in any way to the release of Earnest Money.

3g. 121. **Prorations of Assessments and Fees:** All assessments and fees that are not a lien as of the COE, including homeowner's
122. association fees, rents, irrigation fees, and, if assumed, insurance premiums, interest on assessments, interest on encumbrances,
123. and service contracts, shall be prorated as of COE or ☐ Other _____

3h. 124. **Assessment Liens:** The amount of any assessment, other than homeowner's association assessments, that is a lien as of the
125. COE, shall be ☒ paid in full by Seller ☐ prorated and assumed by Buyer. Any assessment that becomes a lien after COE is
126. the Buyer's responsibility.

3i. 127. **IRS and FIRPTA Reporting:** Seller agrees to comply with IRS reporting requirements. If applicable, Seller agrees to complete,
128. sign, and deliver to Escrow Company a certificate indicating whether Seller is a foreign person or a non-resident alien pursuant to
129. the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer and Seller acknowledge that if the Seller is a foreign person,
130. the Buyer must withhold a tax equal to 10% of the purchase price, unless an exemption applies.

>>

*Residential Resale Real Estate Purchase Contract >>*

Page 4 of

# 4. DISCLOSURES

**4a.** 131. **Seller Property Disclosure Statement ("SPDS"):** Seller shall deliver a completed AAR SPDS form to the Buyer within five
132. (5) days after Contract acceptance. Buyer shall provide notice of any SPDS items disapproved within the Inspection Period or
133. five (5) days after receipt of the SPDS, whichever is later.

**4b.** 134. **Insurance Claims History:** Seller shall deliver to Buyer a written, five-year insurance claims history regarding Premises (or a
135. claims history for the length of time Seller has owned the Premises if less than five years) from Seller's insurance company or
136. an insurance support organization or consumer reporting agency, or if unavailable from these sources, from Seller, within five
137. (5) days after Contract acceptance. (Seller may obscure any reference to date of birth or social security number from the
138. document). Buyer shall provide notice of any items disapproved within the Inspection Period or five (5) days after receipt of the
139. claims history, whichever is later.

**4c.** 140. **Lead-Based Paint Disclosure:** If the Premises were built prior to 1978, the Seller shall: (i) notify the Buyer of any known
141. lead-based paint ("LBP") or LBP hazards in the Premises; (ii) provide the Buyer with any LBP risk assessments or inspections
142. of the Premises in the Seller's possession; (iii) provide the Buyer with the Disclosure of Information on Lead-based Paint and
143. Lead-based Paint Hazards, and any report, records, pamphlets, and/or other materials referenced therein, including the
144. pamphlet "Protect Your Family from Lead in Your Home" (collectively "LBP Information"). Buyer shall return a signed copy of
145. the Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards to Seller prior to COE.

146. ☐ LBP Information was provided prior to Contract acceptance and Buyer acknowledges the opportunity to conduct LBP risk
147. assessments or inspections during Inspection Period.

148. ☒ Seller shall provide LBP Information within five (5) days after Contract acceptance. Buyer may within ten (10) days or
149. _____ days after receipt of the LBP Information conduct or obtain a risk assessment or inspection of the Premises
150. for the presence of LBP or LBP hazards ("Assessment Period"). Buyer may within five (5) days after receipt of the LBP
151. Information or five (5) days after expiration of the Assessment Period cancel this Contract.

152. If Premises were constructed prior to 1978, (BUYER'S INITIALS REQUIRED) ____/____
153. If Premises were constructed in 1978 or later, (BUYER'S INITIALS REQUIRED) ____/____

**4d.** 154. **Affidavit of Disclosure:** If the Premises is located in an unincorporated area of the county, and five or fewer parcels of
155. property other than subdivided property are being transferred, the Seller shall deliver a completed Affidavit of Disclosure in
156. the form required by law to the Buyer within five (5) days after Contract acceptance. Buyer shall provide notice of any
157. Affidavit of Disclosure items disapproved within the Inspection Period or five (5) days after receipt of the Affidavit of
158. Disclosure, whichever is later.

**4e.** 159. **Changes During Escrow:** Seller shall immediately notify Buyer of any changes in the Premises or disclosures made herein, in
160. the SPDS, or otherwise. Such notice shall be considered an update of the SPDS. Unless Seller is already obligated by Section
161. 5a, or otherwise by this Contract or any amendments hereto, to correct or repair the changed item disclosed, Buyer shall be
162. allowed five (5) days after delivery of such notice to provide notice of disapproval to Seller.

# 5. WARRANTIES

**5a.** 163. **Seller Warranties:** Seller warrants and shall maintain and repair the Premises so that, at the earlier of possession or COE: (i) all
164. heating, cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter systems,
165. cleaning systems, and heaters, if any), free-standing range/oven, and built-in appliances will be in working condition; (ii) all other
166. agreed upon repairs and corrections will be completed pursuant to Section 6j; (iii) the Premises, including all additional existing
167. personal property included in the sale, will be in substantially the same condition as on the date of Contract acceptance; and (iv)
168. all personal property not included in the sale and all debris will be removed from the Premises.

**5b.** 169. **Warranties that Survive Closing:** Seller warrants that Seller has disclosed to Buyer and Broker(s) all material latent defects and
170. any information concerning the Premises known to Seller, excluding opinions of value, which materially and adversely affect the
171. consideration to be paid by Buyer. Prior to the COE, Seller warrants that payment in full will have been made for all labor,
172. professional services, materials, machinery, fixtures, or tools furnished within the 150 days immediately preceding the COE in
173. connection with the construction, alteration, or repair of any structure on or improvement to the Premises. Seller warrants that the
174. information regarding connection to a sewer system or on-site wastewater treatment facility (conventional septic or alternative) is
175. correct to the best of Seller's knowledge.

SELLER / SELLER  Initials

Residential Resale Real Estate Purchase Contract • Updated: May 2005
Copyright © 2005 Arizona Association of REALTORS®. All rights reserved.

Initials> BUYER / BUYER

Page 4 of 9

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

1332 w 1st pl»

*Residential Resale Real Estate Purchase Contract >>*                                                                 Page 6 of

50. 176. **Buyer Warranties:** Buyer warrants that Buyer has disclosed to Seller any information that may materially and adversely affe
177. the Buyer's ability to close escrow or complete the obligations of this Contract. At the earlier of possession of the Premises o
178. COE, Buyer warrants to Seller that Buyer has conducted all desired independent inspections and investigations and accepts th
179. **Premises.** Buyer warrants that Buyer is not relying on any verbal representations concerning the Premises excep
180. disclosed as follows: NONE
181. _____

# 6. DUE DILIGENCE

6a. 182. **Inspection Period:** Buyer's Inspection Period shall be ten (10) days or _____
183. acceptance. During the Inspection Period, Buyer, at Buyer's expense, shall (i) conduct all desired physical, environmental, and _____ days after Contrac
184. other types of inspections and investigations to determine the value and condition of the Premises; (ii) make inquiries and
185. consult government agencies, lenders, insurance agents, architects, and other appropriate persons and entities concerning the
186. suitability of the Premises and the surrounding area; (iii) investigate applicable building, zoning, fire, health, and safety codes to
187. determine any potential hazards, violations or defects in the Premises; and (iv) verify any material multiple listing service
188. ("MLS") information. If the presence of sex offenders in the vicinity or the occurrence of a disease, natural death, suicide,
189. homicide or other crime on or in the vicinity is a material matter to the Buyer, it must be investigated by the Buyer during the
190. Inspection Period. Buyer shall keep the Premises free and clear of liens, shall indemnify and hold Seller harmless from all
191. liability, claims, demands, damages, and costs, and shall repair all damages arising from the inspections. Buyer shall provide
192. Seller and Broker(s) upon receipt, at no cost, copies of all inspection reports concerning the Premises obtained by Buyer. Buyer
193. is advised to consult the Arizona Department of Real Estate *Buyer Advisory* provided by AAR to assist in Buyer's due diligence
194. inspections and investigations.

6b. 195. **Square Footage:** BUYER IS AWARE THAT ANY REFERENCE TO THE SQUARE FOOTAGE OF THE PREMISES, BOTH
196. THE REAL PROPERTY (LAND) AND IMPROVEMENTS THEREON, IS APPROXIMATE. IF SQUARE FOOTAGE IS A
197. MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE INSPECTION PERIOD.

6c. 198. **Wood-Destroying Organism or Insect Inspection:** IF CURRENT OR PAST WOOD-DESTROYING ORGANISMS OR
199. INSECTS (SUCH AS TERMITES) ARE A MATERIAL MATTER TO THE BUYER, THESE ISSUES MUST BE INVESTIGATED
200. DURING THE INSPECTION PERIOD. The Buyer shall order and pay for all wood-destroying organism or insect inspections
201. performed during the Inspection Period. If the lender requires an updated Wood-Destroying Organism or Insect Inspection Report
202. prior to COE, it will be performed at Buyer's expense.

6d. 203. **Flood Hazard:** Flood hazard designations or the cost of flood hazard insurance shall be determined by Buyer during the
204. Inspection Period. If the Premises are situated in an area identified as having any special flood hazards by any governmental
205. entity, the lender may require the purchase of flood hazard insurance. Special flood hazards may also affect the ability to
206. encumber or improve the Premises.

6e. 207. **Insurance:** IF HOMEOWNER'S INSURANCE IS A MATERIAL MATTER TO THE BUYER, BUYER SHALL APPLY FOR AND
208. OBTAIN WRITTEN CONFIRMATION OF THE AVAILABILITY AND COST OF HOMEOWNER'S INSURANCE FOR THE
209. PREMISES FROM BUYER'S INSURANCE COMPANY DURING THE INSPECTION PERIOD. Buyer understands that any
210. homeowner's, fire, casualty, or other insurance desired by Buyer or required by lender should be in place at COE.

6f. 211. **Sewer or On-site Wastewater Treatment System:** The Premises are connected to a:
212.    ☒ sewer system;   ☐ septic system;   ☐ alternative system.
213. IF A SEWER CONNECTION IS A MATERIAL MATTER TO THE BUYER, IT MUST BE INVESTIGATED DURING THE
214. INSPECTION PERIOD. If the Premises are served by a septic or alternative system, the AAR On-site Wastewater Treatment
215. Facility Addendum is incorporated herein by reference.
216.                                                                            (BUYER'S INITIALS REQUIRED) ____ BUYER ____ BUYER

6g. 217. **Swimming Pool Barrier Regulations:** During the Inspection Period, Buyer agrees to investigate all applicable state, county, and
218. municipal Swimming Pool barrier regulations and agrees to comply with and pay all costs of compliance with said regulations
219. prior to occupying the Premises, unless otherwise agreed in writing. If the Premises contains a Swimming Pool, Buyer
220. acknowledges receipt of the Arizona Department of Health Services approved private pool safety notice.
221.                                                                            (BUYER'S INITIALS REQUIRED) ____ BUYER ____ BUYER

SELLER SELLER <Initials>    Residential Resale Real Estate Purchase Contract • Updated May 2005    Initials>   BUYER BUYER
                            Copyright © 2005 Arizona Association of REALTORS®. All rights reserved.

Page 5 of 9
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com
1232 w 1st pl9

6h. 222. **BUYER ACKNOWLEDGMENT:** BUYER RECOGNIZES, ACKNOWLEDGES, AND AGREES THAT BROKER(S) ARE NO
223. QUALIFIED, NOR LICENSED, TO CONDUCT DUE DILIGENCE WITH RESPECT TO THE PREMISES OR TH
224. SURROUNDING AREA. BUYER IS INSTRUCTED TO CONSULT WITH QUALIFIED LICENSED PROFESSIONALS T
225. ASSIST IN BUYER'S DUE DILIGENCE EFFORTS. BECAUSE CONDUCTING DUE DILIGENCE WITH RESPECT TO TH
226. PREMISES AND THE SURROUNDING AREA IS BEYOND THE SCOPE OF THE BROKER'S EXPERTISE AND LICENSIN
227. BUYER EXPRESSLY RELEASES AND HOLDS HARMLESS BROKER(S) FROM LIABILITY FOR ANY DEFECTS O
228. CONDITIONS THAT COULD HAVE BEEN DISCOVERED BY INSPECTION OR INVESTIGATION.
229.     (BUYER'S INITIALS REQUIRED) _____ BUYER _____ BUYER

6i. 230. **Inspection Period Notice:** Prior to expiration of the Inspection Period, Buyer shall deliver to Seller a signed notice of any item
231. disapproved. AAR's Buyer's Inspection Notice and Seller's Response form is available for this purpose. Buyer shall conduct a
232. desired inspections and investigations prior to delivering such notice to Seller and all Inspection Period items disapproved sha
233. be provided in a single notice.

6j. 234. **Buyer Disapproval:** If Buyer, in Buyer's sole discretion, disapproves of items as allowed herein, Buyer shall deliver to Seller
235. notice of the items disapproved and state in the notice that Buyer elects to either:
236.   (1) Immediately cancel this Contract and all Earnest Money shall be released to Buyer, or
237.   (2) provide the Seller an opportunity to correct the items disapproved, in which case:
238.     (a) Seller shall respond in writing within five (5) days or _____ days after delivery to Seller of Buyer's notice o
239.         items disapproved. Seller's failure to respond to Buyer in writing within the specified time period shall
240.         conclusively be deemed Seller's refusal to correct any of the items disapproved.
241.     (b) If Seller agrees in writing to correct items disapproved, Seller shall correct the items, complete any
242.         repairs in a workmanlike manner and deliver any paid receipts evidencing the corrections and repairs
243.         to Buyer three (3) days or _____ days prior to COE Date.
244.     (c) If Seller is unwilling or unable to correct any of the items disapproved, Buyer may cancel this
245.         Contract within five (5) days after delivery of Seller's response or after expiration of the time for Seller's
246.         response, whichever occurs first, and all Earnest Money shall be released to Buyer. If Buyer does not cancel
247.         this Contract within the five (5) days as provided, Buyer shall close escrow without correction of those items that
248.         Seller has not agreed in writing to correct.

249. VERBAL DISCUSSIONS WILL NOT EXTEND THESE TIME PERIODS. Only a written agreement signed by both parties will
250. extend response times or cancellation rights.

251. BUYER'S FAILURE TO GIVE NOTICE OF DISAPPROVAL OF ITEMS OR CANCELLATION OF THIS CONTRACT WITHIN THE
252. SPECIFIED TIME PERIOD SHALL CONCLUSIVELY BE DEEMED BUYER'S ELECTION TO PROCEED WITH THE
253. TRANSACTION WITHOUT CORRECTION OF ANY DISAPPROVED ITEMS.

6k. 254. **Notice of Non-Working Warranted Items:** Buyer shall provide Seller with notice of any non-working warranted item(s) of which
255. Buyer becomes aware during the Inspection Period or the Seller warranty for that item(s) shall be waived. Delivery of such notice
256. shall not affect Seller's obligation to maintain or repair the warranted item(s).

6l. 257. **Home Warranty Plan:** Buyer and Seller are advised to investigate the various home warranty plans available for purchase. The
258. parties acknowledge that different home warranty plans have different coverage options, exclusions, limitations, service fees and
259. most plans exclude pre-existing conditions.

260. ☐ A Home Warranty Plan will be ordered by ☐ Buyer or ☐ Seller with the following optional coverage
261. _____, to be issued by _____
262. $ _____, to be paid for by ☐ Buyer ☐ Seller  at a cost not to exceed
263. ☒ Buyer declines the purchase of a Home Warranty Plan.

6m. 264. **Walkthrough(s):** Seller grants Buyer and Buyer's inspector(s) reasonable access to conduct walkthrough(s) of the Premises for the
265. purpose of satisfying Buyer that any corrections or repairs agreed to by the Seller have been completed, warranted items are in
266. working condition and that the Premises is in substantially the same condition as of the date of Contract acceptance. If Buyer does
267. not conduct such walkthrough(s), Buyer releases Seller and Broker(s) from liability for any defects that could have been discovered.

6n. 268. **Seller's Responsibility Regarding Inspections and Walkthrough(s):** Seller shall make the Premises available for all
269. inspections and walkthrough(s) upon reasonable notice by Buyer. Seller shall, at Seller's expense, have all utilities on, including
270. any propane, until COE to enable Buyer to conduct these inspections and walkthrough(s).

| SELLER | SELLER | Initials

Residential Resale Real Estate Purchase Contract • Updated: May 2005
Copyright © 2005 Arizona Association of REALTORS®. All rights reserved.

Page 6 of 9

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

BUYER  BUYER  Initials

1332 w 1st pla

# 7. REMEDIES

**7a. 271. Cure Period:** A party shall have an opportunity to cure a potential breach of this Contract. If a party fails to comply with a
272. provision of this Contract, the other party shall deliver a notice to the non-complying party specifying the non-compliance. If th
273. non-compliance is not cured within three (3) days after delivery of such notice ("Cure Period"), the failure to comply shall becom
274. a breach of Contract.

**7b. 275. Breach:** In the event of a breach of Contract, the non-breaching party may cancel this Contract and/or proceed against th
276. breaching party in any claim or remedy that the non-breaching party may have in law or equity, subject to the Alternative Disput
277. Resolution obligations set forth herein. In the case of the Seller, because it would be difficult to fix actual damages in the event o
278. Buyer's breach, the Earnest Money may be deemed a reasonable estimate of damages and Seller may, at Seller's option, accep
279. the Earnest Money as Seller's sole right to damages; and in the event of Buyer's breach arising from Buyer's failure to deliver th
280. notice required by Section 2a, or Buyer's inability to obtain loan approval due to the waiver of the appraisal contingency pursuan
281. to Section 2c, Seller shall exercise this option and accept the Earnest Money as Seller's sole right to damages. An unfulfille
282. contingency is not a breach of Contract.

**7c. 283. Alternative Dispute Resolution ("ADR"):** Buyer and Seller agree to mediate any dispute or claim arising out of or relating t
284. this Contract in accordance with the REALTORS® Dispute Resolution System, or as otherwise agreed. All mediation costs sha
285. be paid equally by the parties. In the event that mediation does not resolve all disputes or claims, the unresolved disputes o
286. claims shall be submitted for binding arbitration. In such event, the parties shall agree upon an arbitrator and cooperate in th
287. scheduling of an arbitration hearing. If the parties are unable to agree on an arbitrator, the dispute shall be submitted to th
288. American Arbitration Association ("AAA") in accordance with the AAA Arbitration Rules for the Real Estate Industry. Th
289. decision of the arbitrator shall be final and nonappealable. Judgment on the award rendered by the arbitrator may be entered i
290. any court of competent jurisdiction. Notwithstanding the foregoing, either party may opt out of binding arbitration within thirty
291. (30) days after the conclusion of the mediation conference by notice to the other and in such event either party shall have the
292. right to resort to court action.

**7d. 293. Exclusions from ADR:** The following matters are excluded from the requirement for ADR hereunder: (i) any action brought in
294. the Small Claims Division of an Arizona Justice Court (up to $2,500) so long as the matter is not thereafter transferred or
295. removed from the small claims division; (ii) judicial or nonjudicial foreclosure or other action or proceeding to enforce a deed of
296. trust, mortgage, or agreement for sale; (iii) an unlawful entry or detainer action; (iv) the filing or enforcement of a mechanic's
297. lien; or (v) any matter that is within the jurisdiction of a probate court. Further, the filing of a judicial action to enable the
298. recording of a notice of pending action ("lis pendens"), or order of attachment, receivership, injunction, or other provisional
299. remedies shall not constitute a waiver of the obligation to submit the claim to ADR, nor shall such action constitute a breach of
300. the duty to mediate or arbitrate.

**7e. 301. Attorney Fees and Costs:** The prevailing party in any dispute or claim between Buyer and Seller arising out of or relating to this
302. Contract shall be awarded their reasonable attorney fees and costs. Costs shall include, without limitation, attorney fees, expert
303. witness fees, fees paid to investigators, and arbitration costs.

# 8. ADDITIONAL TERMS AND CONDITIONS

**8a. 304.** SELLER'S LENDER TO CREDIT BUYER 2% OF SELLING PRICE FOR CLOSING COSTS.
305. _____
306. PURCHASER IS RELATED TO REALTOR
307. _____
308. _____
309. _____
310. _____
311. _____
312. _____
313. _____
314. _____
315. _____

Residential Resale Real Estate Purchase Contract - Updated: May 2006
Copyright © 2006 Arizona Association of REALTORS®. All rights reserved.

SELLER | SELLER  >Initials<  BUYER | BUYER

Page 7 of 9

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

1332 w 1st pls

8b. 316. **Risk of Loss:** If there is any loss or damage to the Premises between the date of Contract acceptance and COE or possession,
317. whichever is earlier, by reason of fire, vandalism, flood, earthquake, or act of God, the risk of loss shall be on the Seller, provided,
318. however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the purchase price, either Seller or
319. Buyer may elect to cancel the Contract.

8c. 320. **Permission:** Buyer and Seller grant Broker(s) permission to advise the public of this Contract.

8d. 321. **Arizona Law:** This Contract shall be governed by Arizona law and jurisdiction is exclusively conferred on the State of Arizona.

8e. 322. **Time is of the Essence:** The parties acknowledge that time is of the essence in the performance of the obligations
323. described herein.

8f. 324. **Compensation:** Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered as previously agreed by
325. separate written agreement(s), which shall be delivered by Broker(s) to Escrow Company for payment at COE, if not previously paid.
326. If Seller is obligated to pay Broker(s), this Contract shall constitute an irrevocable assignment of Seller's proceeds at COE. If Buyer is
327. obligated to pay Broker(s), payment shall be collected from Buyer as a condition of COE. COMMISSIONS PAYABLE FOR THE
328. SALE, LEASING, OR MANAGEMENT OF PROPERTY ARE NOT SET BY ANY BOARD OR ASSOCIATION OF REALTORS®, OR
329. MULTIPLE LISTING SERVICE, OR IN ANY MANNER OTHER THAN BETWEEN THE BROKER AND CLIENT.

8g. 330. **Copies and Counterparts:** A fully executed facsimile or electronic copy of the Contract shall be treated as an original Contract. This Contract
331. and any other documents required by this Contract may be executed by facsimile or other electronic means and in any number of
332. counterparts, which shall become effective upon delivery as provided for herein, except that the Lead-Based Paint Disclosure Statement may
333. not be signed in counterpart. All counterparts shall be deemed to constitute one instrument, and each counterpart shall be deemed an original.

8h. 334. **Days:** All references to days in this Contract shall be construed as calendar days and a day shall begin at 12:00 a.m. and end at 11:59 p.m.

8i. 335. **Calculating Time Periods:** In computing any time period prescribed or allowed by this Contract, the day of the act or event from
336. which the time period begins to run is not included and the last day of the time period is included. Contract acceptance occurs on
337. the date that the signed Contract (and any incorporated counter offer) is delivered to and received by the appropriate Broker. Acts
338. that must be performed three days prior to the COE Date must be performed three full days prior (i.e., if COE Date is Friday the
339. act must be performed by 11:59 p.m. on Monday).

8j. 340. **Entire Agreement:** This Contract, and any addenda and attachments, shall constitute the entire agreement between Seller and
341. Buyer, shall supersede any other written or oral agreements between Seller and Buyer and can be modified only by a writing
342. signed by Seller and Buyer. The failure to initial any page of this Contract shall not affect the validity or terms of this Contract.

8k. 343. **Subsequent Offers:** Buyer acknowledges that Seller has the right to accept subsequent offers until COE. Seller understands that
344. any subsequent offer accepted by the Seller must be a backup offer contingent on the cancellation of this Contract.

8l. 345. **Cancellation:** A party who wishes to exercise the right of cancellation as allowed herein may cancel this Contract by delivering
346. notice stating the reason for cancellation to the other party or to the Escrow Company. Cancellation shall become effective
347. immediately upon delivery of the cancellation notice.

8m. 348. **Notice:** Unless otherwise provided, delivery of all notices and documentation required or permitted hereunder shall be in writing
349. and deemed delivered and received when (i) hand-delivered, (ii) sent via facsimile transmission, (iii) sent via electronic mail, if
350. email addresses are provided herein, or (iv) sent by recognized overnight courier service, and addressed to Buyer as indicated in
351. Section 8r, to Seller as indicated in Section 9a and to the Escrow Company indicated in Section 3a.

8n. 352. **Earnest Money:** Earnest Money is in the form of: ☐ Personal Check ☒ Other: __COMPANY CHECK__
353. If applicable, Earnest Money has been received by Broker named in Section 8r and upon acceptance of this offer will be
354. deposited with: ☒ Escrow Company ☐ Broker's Trust Account

8o. 355. **Release of Broker(s):** Seller and Buyer hereby expressly release, hold harmless and indemnify Broker(s) in this
356. transaction from any and all liability and responsibility regarding financing, the condition, square footage, lot lines,
357. boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation, building codes,
358. governmental regulations, insurance or any other matter relating to the value or condition of the Premises.
359.
(BUYER'S INITIALS REQUIRED) ___BUYER___ ___BUYER___

8p. 360. **Terms of Acceptance:** This offer will become a binding Contract when acceptance is signed by Seller and a
361. signed copy delivered in person, by mail, facsimile or electronically, and received by Broker named in Section 8r
362. by ___August 14___, 2009 at ___5:00___ ☐ a.m. ☒ p.m., Mountain Standard Time. Buyer
363. may withdraw this offer at any time prior to receipt of Seller's signed acceptance. If no signed acceptance is received by
364. this date and time, this offer shall be deemed withdrawn and the Buyer's Earnest Money shall be returned.

9q. 365. **THIS CONTRACT CONTAINS NINE PAGES EXCLUSIVE OF ANY ADDENDA AND ATTACHMENTS. PLEASE ENSURE THAT
366. YOU HAVE RECEIVED AND READ ALL NINE PAGES OF THIS OFFER AS WELL AS ANY ADDENDA AND ATTACHMENTS.**

SELLER SELLER Initials
Residential Resale Real Estate Purchase Contract • Updated: May 2005
Copyright © 2005 Arizona Association of REALTORS®. All rights reserved.
Initials BUYER BUYER
Page 8 of 9
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com
1332 W 1st pla

**Residential Resale Real Estate Purchase Contract >>**

Page 9 of

**8r. 367.** Broker on behalf of Buyer:

368. DEBBIE DRAGER | DD296 | 1ST USA REALTY | FUSA01
PRINT SALESPERSON'S NAME | AGENT CODE | PRINT FIRM NAME | FIRM CODE

369. _____ 2500 W POWER RD MESA | AZ | 85213
FIRM ADDRESS | STATE | ZIP CODE

370. (602) 689-8983 | (480) 681-6052 | DEBBIE.DRAGER@YAHOO.COM
TELEPHONE | FAX | EMAIL

**8s. 371.** Agency Confirmation: The Broker named in Section 8r above is the agent of (check one):
372. [X] the Buyer;  [ ] the Seller; or  [ ] both the Buyer and Seller

**8t. 373.** The undersigned agree to purchase the Premises on the terms and conditions herein stated and acknowledge receipt of
374. a copy hereof including the Buyer Attachment.

375. /s/ _____ 08/12/2009
BUYER'S SIGNATURE | MO/DA/YR | BUYER'S SIGNATURE | MO/DA/YR
ERIC NIELSEN ENTERPRISES INC

376. _____
ADDRESS | ADDRESS

377. _____
CITY, STATE, ZIP CODE | CITY, STATE, ZIP CODE

## 9. SELLER ACCEPTANCE

**9a. 378.** Broker on behalf of Seller:

379. _____
PRINT SALESPERSON'S NAME | AGENT CODE | PRINT FIRM NAME | FIRM CODE

380. _____
FIRM ADDRESS | STATE | ZIP CODE

381. _____
TELEPHONE | FAX | EMAIL

**9b. 382.** Agency Confirmation: The Broker named in Section 9a above is the agent of (check one):
383. [ ] the Seller; or  [ ] both the Buyer and Seller

**9c. 384.** The undersigned agree to sell the Premises on the terms and conditions herein stated, acknowledge receipt of a
385. copy hereof and grant permission to Broker named on Section 9a to deliver a copy to Buyer.

386. [ ] Counter Offer is attached, and is incorporated herein by reference. Seller should sign both this offer and the Counter Offer.
387. [ ] If there is a conflict between this offer and the Counter Offer, the provisions of the Counter Offer shall be controlling.

388. /s/ SW VL  08/13/09 | /s/ Marwa Yauger 8-13-0
SELLER'S SIGNATURE | MO/DA/YR | SELLER'S SIGNATURE | MO/DA/YR

389. OWNER OF RECORD
SELLER'S NAME PRINTED | SELLER'S NAME PRINTED

390. _____
ADDRESS | ADDRESS

391. _____
CITY, STATE, ZIP CODE | CITY, STATE, ZIP CODE

392. [ ] OFFER REJECTED BY SELLER: _____
MONTH | DAY | YEAR | (SELLER'S INITIALS)

For Broker Use Only:
Brokerage File/Log No. _____ Manager's Initials _____ Broker's Initials _____ Date _____
MO/DA/YR

Initials SELLER | SELLER
Residential Resale Real Estate Purchase Contract • Updated: May 2005
Copyright © 2005 Arizona Association of REALTORS®. All rights reserved.
Page 9 of 9
Produced with ZipForm® by RE FormsNet, LLC 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipform.com
Initials BUYER | BUYER
1332 W 1st pls

# "AS IS" ADDENDUM




*Document updated August 2009*

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

1. Seller: **OWNER OF RECORD**
2. Buyer: **ERIC NIELSEN ENTERPRISES INC**
3. Premises Address: **1332 W 1ST PLACE, MESA, AZ 85201**
4. Date: **August 12, 2009**

5. The following additional terms and conditions are hereby included as a part of the Contract between Seller and Buyer for the
6. above referenced Premises. All terms and conditions of the Contract are hereby included herein and delivery of all notices
7. and documentation shall be deemed delivered and received when sent as required by Section 8m of the Contract.

8. A. Seller and Buyer agree that the Premises is being sold in its existing condition ("AS IS") and Seller makes no warranty
9. to Buyer, either express or implied, as to the (1) condition of the Premises, including, but not limited to, Seller's Warranties
10. in Lines 163-166 of Section 5a, which Buyer hereby waives; (2) zoning of the Premises; or (3) Premises' fitness for any
11. particular use or purpose. However, Seller warrants and shall maintain and repair the Premises so that, pursuant to lines
12. 167-168, at the earlier of possession or COE, the Premises, including all additional existing personal property included
13. in the sale, will be in substantially the same condition as on the date of Contract acceptance and all personal property
14. not included in the sale and all debris will be removed from the Premises.

15. B. Buyer is advised to conduct independent inspection(s) and investigations regarding the Premises within the
16. Inspection Period as specified in Section 6a. Buyer retains the right pursuant to Section 6j. Seller shall not
17. be obligated to correct any defects that may be discovered during Buyer's inspection(s) and
18. investigations or otherwise.

19. C. Notwithstanding the foregoing, if an On-Site Wastewater Treatment Facility (conventional septic or alternative
20. system) ("Facility") has been installed on the Premises, Seller and Buyer agree to complete and execute the AAR
21. On-Site Wastewater Treatment Facility Addendum and Seller agrees to pay for the Facility inspections, fees or
22. repairs as set forth therein.

23. D. Seller acknowledges that selling the Premises "AS IS" does not relieve Seller of the legal obligation to disclose all
24. known material latent defects to Buyer.

25. E. In the event that any provision contained in this Addendum conflicts in whole or in part with any of the terms
26. contained in the Contract, the provisions of this Addendum shall prevail and the conflicting terms are hereby
27. considered deleted and expressly waived by both Buyer and Seller.

28. F. Other Terms and Conditions:
29. 
30. 

31. **BUYER ACKNOWLEDGES THAT BUYER IS HEREBY ADVISED TO SEEK APPROPRIATE COUNSEL REGARDING**
32. **THE RISKS OF BUYING A PROPERTY IN "AS IS" CONDITION.**
33. Buyer recognizes, acknowledges, and agrees that Broker(s) are not qualified, nor licensed, to conduct due diligence with respect
34. to the premises or the surrounding area. Buyer is instructed to consult with qualified licensed professionals to assist in Buyer's due
35. diligence efforts. Because conducting due diligence with respect to the premises and the surrounding area is beyond the scope of
36. the Broker's expertise and licensing, Buyer expressly releases and holds harmless Broker(s) from liability for any defects or conditions
37. that could have been discovered by inspection or investigation. Seller and Buyer hereby expressly release, hold harmless and
38. indemnify Broker(s) in this transaction from any and all liability and responsibility regarding financing, the condition,
39. square footage, lot lines, boundaries, value, rent rolls, environmental problems, sanitation systems, roof, wood infestation,
40. building codes, governmental regulations, insurance or any other matter relating to the value or condition of the Premises.

41. *BUYER'S SIGNATURE* **08/12/2009**     *BUYER'S SIGNATURE*  
    ERIC NIELSEN ENTERPRISES INC    MO/DA/YR

42. *SELLER'S SIGNATURE* **08/13/09**     *SELLER'S SIGNATURE* **8-13-09**  
    OWNER OF RECORD    MO/DA/YR    MO/DA/YR

"As Is" Addendum • Updated: August 2009 • Copyright © 2009 Arizona Association of REALTORS®. All rights reserved.

1st USA Realty Professional 1001 E Warner #104 Tempe, AZ 85284  
Phone: 480.456.8600    Fax: 480.456.8872    Debbie Drager

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    1332 w 1st place

09/29/2009 14:36 4808558662 CINDY AND SID BLACK PAGE 12/14

# SHORT SALE ADDENDUM
## TO THE RESIDENTIAL RESALE REAL ESTATE PURCHASE CONTRACT

Page 1 of 2
Document updated: August 2008



**ARIZONA ASSOCIATION of REALTORS**
REAL SOLUTIONS. REALTOR® SUCCESS.

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS®. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

1. Seller: __OWNER OF RECORD__
2. Buyer: __ERIC NIELSEN ENTERPRISES INC__
3. Premises Address: __1332 W 1ST PLACE, MESA, AZ 85201__
4. Date: __August 12, 2009__

5. The following additional terms and conditions are hereby included as part of the Contract between Seller and Buyer for the above
6. referenced Premises. Delivery of all notices and documentation shall be deemed delivered and received when sent as required by
7. Section 8m of the Contract.

**CONTINGENT UPON ACCEPTABLE SHORT SALE AGREEMENT**

9. Buyer and Seller acknowledge that there is more debt owing against the Premises than the purchase price. Therefore, this Contract
10. is contingent upon an agreement between the Seller and Seller's creditor(s), acceptable to both, to sell the Premises for less than
11. the loan amount(s) ("short sale"). Buyer and Seller acknowledge that it may take weeks or months to obtain creditor(s) approval of
12. a short sale.

13. Nothing shall limit a Seller from accepting subsequent offers from subsequent buyer(s) and submitting the back-up contract(s) to
14. Seller's creditor(s) for consideration. All parties understand and agree that Seller's creditor(s) may elect to allow the Seller to sell the
15. Premises only to the holder of the Contract with terms and conditions most acceptable to creditor(s).

**DOCUMENTATION TO CREDITOR(S)**

17. Seller shall submit to creditor(s) a copy of this Contract, including this and other Addenda, and any other documentation required by the
18. creditor(s) for approval of this sale within five (5) days after Contract acceptance. Seller agrees to diligently work to obtain short sale
19. approval and will promptly provide the creditor(s) with all additional documentation required, including an appraisal, at Seller's expense, if
20. required. Seller instructs creditor(s) to provide approval status updates to Broker(s) and Buyer upon request.

**TERMS UPON ACCEPTABLE SHORT SALE AGREEMENT**

22. Agreement Notice: If Seller and Seller's creditors enter into a short sale agreement, the Seller shall immediately deliver notice
23. to Buyer ("Agreement Notice").

24. Time Periods: The date of Seller's delivery of the Short Sale Agreement Notice to Buyer shall be deemed the date of Contract
25. acceptance for purposes of all applicable Contract time periods.

26. Escrow and Earnest Money: Buyer shall promptly open Escrow and deposit Earnest Money as described in the Contract upon receipt
27. of Agreement Notice.

28. Loan Costs: Buyer will be responsible for all Buyers' Loan Costs.

29. Seller Warranties: Buyer hereby waives Seller's warranties as set forth in Lines 163-166 of Section 5a of the Contract that all listed
30. items shall be in working condition at the earlier of possession or COE. However, Seller warrants and shall maintain and repair the
31. Premises so that, pursuant to lines 167-168 of the Contract, at the earlier of possession or COE, the Premises, including all heating,
32. cooling, mechanical, plumbing, and electrical systems (including swimming pool and/or spa, motors, filter systems, cleaning systems,
33. and heaters, if any), free-standing range/oven, built-in appliances and additional existing personal property included in the sale, will
34. be in substantially the same condition as on the date of Contract acceptance and all personal property not included in the sale and
35. all debris will be removed from the Premises.

36. Close of Escrow: Close of Escrow shall occur thirty (30) days or _____ days after delivery of Agreement Notice.

37. Creditor Requirements: Buyer and Seller agree to cooperate with Creditor(s) and sign additional Creditor disclosure(s) or execute
38. additional addendum(a) required by Creditor(s) as a condition of approval of the short sale, provided that Buyer and Seller incur no
39. additional cost or liability.

**BUYER CANCELLATION**

41. Buyer may unilaterally cancel this Contract by notice to Seller at any time before receipt of a short sale Agreement Notice from Seller.

SELLER [initials] / SELLER
>> BUYER [initials] / BUYER

Short Sale Addendum to the Residential Resale Real Estate
Purchase Contract • Updated: August 2008
Copyright © 2008 Arizona Association of REALTORS®. All rights reserved.

Page 1 of 2

1st USA Realty Professional 1001 E Warner #104 Tempe, AZ 85284
Phone: 480.456.5600    Fax: 480.456.8872    Debbie Drager

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

1332 w 1st pla

<< Addendum to the Residential Resale Real Estate Purchase Contract >>

Page 2 of 2

42. **LEGAL AND TAX ADVICE**
43. Seller acknowledges that Broker is not qualified to provide financial, legal, or tax advice regarding a short sale transaction.
44. Therefore, the Seller is advised to obtain professional tax advice and consult independent legal counsel immediately
45. regarding the tax implications and advisability of entering into a short sale agreement.
46. (SELLER'S INITIALS REQUIRED) ___/___

47. **UNFULLFILLED CONTINGENCY**
48. In the event that Seller and Seller's creditor(s) are unable to reach a short sale agreement acceptable to both, at the sales price contained
49. herein, Seller shall promptly notify Buyer of same, and the Contract shall be deemed cancelled due to the unfulfilled short sale contin-
50. gency. If applicable, Buyer shall be entitled to a return of any Earnest Money.

51. **OTHER TERMS AND CONDITIONS**
52. _____
53. _____
54. _____
55. _____
56. _____
57. _____
58. _____
59. _____
60. _____
61. _____
62. _____
63. _____
64. _____
65. _____
66. _____
67. _____
68. _____
69. _____
70. _____
71. _____
72. _____
73. _____
74. _____
75. _____

76. In the event that any provision contained in this Addendum conflicts in whole or in part with any terms contained in the Contract,
77. the provisions of this Addendum shall prevail and the conflicting terms are hereby considered deleted and expressly waived by
78. both Buyer and Seller.
79. BUYER'S SIGNATURE: ERIC NIELSON ENTERPRISES INC       08/12/2009
80. SELLER'S SIGNATURE: OWNER OF RECORD       08/13/09
    BUYER'S SIGNATURE: Maria J Vaughn       8-13-09

Short Sale Addendum to the Residential Resale Real Estate Purchase Contract • Updated: August 2009
Copyright © 2009 Arizona Association of REALTORS®. All rights reserved.
Page 2 of 2

1332 w 1st pls

# DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS (SALES)

**ARIZONA ASSOCIATION of REALTORS**
REAL SOLUTIONS. REALTOR SUCCESS

The pre-printed portion of this form has been drafted by the Arizona Association of REALTORS. Any change in the pre-printed language of this form must be made in a prominent manner. No representations are made as to the legal validity, adequacy and/or effects of any provision, including tax consequences thereof. If you desire legal, tax or other professional advice, please consult your attorney, tax advisor or professional consultant.

Document updated: January 2008



1. **Premises Address:** 1332 W 1ST PLACE, MESA, AZ 85201
2. **Lead Warning Statement:** Every buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint, which may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and to notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint or lead-based paint hazards is recommended prior to purchase.

## 1. SELLER'S DISCLOSURE (Seller must complete and initial sections a, b and c below)

(a) Lead-based paint and/or lead-based paint hazards (check either 1 or 2 below):
  1. ☐ Seller is aware that lead-based paint and/or lead-based paint hazards are present in the residence(s) and/or building(s) included in the sale. (Explain) _____
  2. ☒ Seller has no knowledge of any lead-based paint and/or lead-based paint hazards in the residence(s) and building(s) included in this sale.

(SELLER'S INITIALS REQUIRED) MLV / [initials]
SELLER / SELLER

(b) Records and reports available to the seller (check either 1 or 2 below):
  1. ☐ Seller has provided the buyer with all available records and reports relating to lead-based paint and/or lead-based paint hazards in the residence(s) and building(s) included in the sale. (List documents) _____
  2. ☒ Seller has no reports or records relating to lead-based paint and/or lead-based paint hazards in the residence(s) and building(s) included in this sale.

(SELLER'S INITIALS REQUIRED) MLV / [initials]
SELLER / SELLER

(c) Seller acknowledges Seller's obligation to disclose to any real estate agent(s) to whom the seller directly or indirectly is to pay compensation with regard to the transaction contemplated by this disclosure any known lead-based paint and/or lead-based paint hazards in the premises to be sold, as well as the existence of any reports or records relating to lead-based paint or lead-based paint hazards in the premises to be sold. Seller further acknowledges that this disclosure accurately reflects the entirety of the information provided by the seller to the agent(s) with regard to lead-based paint, lead-based paint hazards, and lead-based paint risk-assessment or inspection reports and records.

(SELLER'S INITIALS REQUIRED) [initials] / MLV
SELLER / SELLER

## 2. BUYER'S ACKNOWLEDGMENT (Buyer must complete and initial sections a, b and c below)

(a) Buyer has read the information set forth above, and has received copies of the reports, records, or other materials listed above, if any.

(BUYER'S INITIALS REQUIRED) _____ / _____
BUYER / BUYER

(b) Buyer has received the pamphlet *Protect Your Family From Lead In Your Home*.

(BUYER'S INITIALS REQUIRED) _____ / _____
BUYER / BUYER

(c) Buyer has (check one):
  ☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
  ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

(BUYER'S INITIALS REQUIRED) _____ / _____
BUYER / BUYER

## 3. AGENT'S ACKNOWLEDGMENT (Any real estate agent who is to receive compensation from the seller or the listing agent with regard to the transaction contemplated in this disclosure must initial below.)

The agent(s) whose initials appear below has (have) ensured the seller's compliance under the Residential Resale Lead-Based Paint Hazard Reduction Act of 1992 by the seller's use and completion of this disclosure form.

(AGENT'S INITIALS REQUIRED) _____ / _____
LISTING AGENT / COOPERATING AGENT

**Certification of Accuracy:** By signing below, each signatory acknowledges that he or she has reviewed the above information, and certifies that, to the best of his or her knowledge, the information provided by the signatory is true and accurate.

[signature] 08/13/09
**SELLER'S SIGNATURE** / MO/DA/YR        **BUYER'S SIGNATURE** / MO/DA/YR
OWNER OF RECORD

[signature] 8/13/09        ERIC NIELSEN ENTERPRISES INC
**SELLER'S SIGNATURE** / MO/DA/YR        **BUYER'S SIGNATURE** / MO/DA/YR

_____ / _____        DEBBIE DRAGER
**LISTING AGENT'S SIGNATURE** / MO/DA/YR        **COOPERATING AGENT'S SIGNATURE** / MO/DA/YR

Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (Sales) • Updated: January 2008 • Copyright © 2008 Arizona Association of REALTORS. All rights reserved.
IN USA Realty Professional 1001 E Warner #104 Tempe, AZ 85284        Phone: 480.456.9600        Fax: 480.456.5873        1332 w 1st pls
Debbie Drager
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com